## BALTIMORE COUNTY, MARYLAND *v.* LETKE ET UX.

[No. 170, September Term, 1972.]

*Decided February 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Maurice W. Baldwin, Jr., Assistant County Solicitor,* with whom were *R. Bruce Alderman, County Solicitor,*

and *Harry S. Shapiro, Assistant County Solicitor,* on the brief, for appellant.

Submitted on brief by *E. Harrison Stone* for appellees.

BARNES, J., delivered the opinion of the Court.

The question in this appeal is whether a decree of the Circuit Court for Baltimore County, in equity (Jenifer, J.), dated June 29, 1972, directing that an agreement for the sale of land owned by Baltimore County, the appellant and defendant below, to Herman E. Letke and Lorraine L. Letke, his wife, appellees and plaintiffs below, be specifically performed, was properly entered. We have concluded that it was properly entered and the decree will be affirmed.

The facts are not in dispute and, indeed, Judge Jenifer concluded that the plaintiffs Letke were entitled to summary judgment for the granting of specific performance.

The County owned, in fee simple, a small parcel of land in Dundalk, 9 feet by 150 feet, fronting 9 feet on the east side of Manor Avenue and shown on recorded Plat 1 of Merritt Homes. Mr. and Mrs. Letke entered into negotiations with the County to purchase this land in the autumn of 1971 and agreed to pay the County $135.00 for the land. They duly received a letter from the County, dated January 14, 1972, signed by James A. Redmond, Jr. of the County's Bureau of Land Acquisition, Department of Public Works. The letter was as follows:

> "The advertisement in THE DUNDALK TIMES covering the above property has terminated, and since there were no objections to the sale, we are in the process of preparing the Deed conveying said property from Baltimore County to you.
>
> "Upon receipt of your check in the amount of $135.00, made payable to Baltimore County, Maryland, we will have the Deed recorded and

forward same to you when it is returned from recordation."

The advertisement referred to in the letter of January 14, 1972, was published in The Dundalk Times newspaper on December 23 and 30, 1971, and on January 6, 1972. It was as follows:

"LEGAL NOTICE

"R. BRUCE ALDERMAN,
COUNTY SOLICITOR
County Office Building
Towson, Maryland 21204

"PUBLIC NOTICE OF
CONVEYANCE OF
COUNTY PROPERTY

"Pursuant to Article 25A Section 5 (b) of the annotated code of Maryland 1957 as amended, Baltimore County, Maryland *proposes to grant and convey unto Herman E. Letke and wife, at and for the price of $135.00, plus costs,* the hereinafter described fee simple property which has *been declared as no longer needed for public use.*

"BEING a lot 9 feet by 150 feet, fronting 9 feet on east side of Manor Road, 116 feet, more or less, north of Holabird Avenue, north side of alley running between Manor and Searles Road, rear of lots 7 to 13 inclusive, Block 1, all as shown on Plat 1, Merritt Homes, which plat is recorded among the Plat Records of Baltimore County in Plat Book G.L.B. No. 18, folio 5, and also shown and indicated 'Area to be Released' on Bureau of Land Acquisition Drawing No. SP 12-024.

"BEING the same lot of ground described in a Deed dated September 8, 1960, from Norman W. Wood, Director of Finance and Collector of

State and County Taxes, to Baltimore County, Maryland, said Deed being recorded among the Land Records of Baltimore County in Liber W.J.R. No. 3753, folio 524.

"The purpose of this Notice is to give opportunity for objections to said proposed sale. If there be any objections they should be reduced to writing and delivered to the office of Central Services on or before the 13th day of January, 1972.

BALTIMORE COUNTY,
MARYLAND

By: W. E. FORNOFF

County Administrative Officer

"Approved as to form
and legal sufficiency
this 14 day of Dec., 1971

Harry C. Davison, Jr.

Assistant County Solicitor
Dec. 23-30-Jan. 6."

(Emphasis supplied)

In response to the letter of January 14, the Letkes mailed their check for $135.00 to the County. They had not received notice of any kind in the intervening period that the County was not going to sell the land to them.

On January 19, 1972, the Letkes received a letter dated January 18, 1972, from the County, signed by Mr. Redmond for the Bureau of Land Acquisition, reading as follows:

"Please be advised that an objection has been raised with regard to the conveyance of the above strip of land and consequently please disregard our letter of January 14, 1972.

"As soon as the matter has been resolved, we will contact you.

"Please do not forward your check for $135.00 at this time."

The objection to the sale was made by a letter to the County's Deputy Director of Central Services, signed by eight neighboring property owners who complained that they had no other place to park their automobiles other than on the subject property and they knew nothing of the impending sale of that property "until some of us were offered the option of leasing this property to park our automobiles behind our homes." The letter concluded:

"This property is being purchased as a spite action, and we respectfully request that you assist us in getting the opportunity to buy the parking area in the rear of our homes."

An examination of the County's files by the Letkes disclosed that the letter of objection was date-stamped by the County as having been received at 1:00 P.M. on January 19, 1972, or well after the deadline mentioned in the newspaper advertisement.

On that day, January 19, Mr. Redmond of the Bureau of Land Acquisition wrote the Letkes as follows:

"Re our letter of January 18, 1972, we are returning your check in the amount of $135.00."

The bill of complaint for specific performance and other and further relief, with exhibits of the letters between the County and the Letkes and the advertisement, was filed by the Letkes against the County on March 7, 1972. It was accompanied by a Motion for Summary Judgment and a supporting affidavit of the Letkes, setting forth the above facts, identifying the exhibits as genuine and stating that they were competent to be witnesses and had personal knowledge of the facts stated.

The County's answer substantially admitted all of the relevant allegations in the bill of complaint and further alleged "that the subject strip of land has now been determined to be needed for public use and necessity by

virtue of the fact that the public alley-way abutting the subject site is narrow and in need of widening." An affidavit in opposition to the Motion for Summary Judgment of an Assistant County Solicitor was filed. It repeated the allegations in the answer in regard to the need of the strip of land for public use, identified and attached the letter of objection and stated that "the proposed sale was not finalized under the authority of the Executive Order . . . which is attached hereto and marked as Exhibit '1'." This Executive Order is dated January 7, 1963, and was signed by Spiro T. Agnew, then County Executive. We will consider the provisions of this Executive Order later in this opinion.

As we have indicated, Judge Jenifer was of the opinion that summary judgment should be entered for the plaintiffs Letke for specific performance and entered a decree in accordance with his opinion.

The County raised two questions in the lower court, i.e., (1) that the sale had not been finalized in accordance with the Executive Order of January 7, 1963, and (2) that the subject property had been determined to be needed for public use. We will now turn to these two questions.

(1)

The Executive Order of January 7, 1963, first sets forth the internal procedure in regard to the disposition of county property which the Chief of the Bureau of Land Acquisition has determined "is not needed for public use." Before making that determination, certain clearances are required from the office of planning and zoning and other county agencies which might have a use for the property. When the clearances are obtained and the Chief of the Bureau of Land Acquisition makes the determination that the property is not needed for public use, the determination must be submitted for executive approval. After such approval is obtained, the determination is forwarded to the Director of Central Services for a description of the property and an estimate of the

value of it. Thereafter, the property may be sold at public sale or at private sale if a public sale would be futile. Advertisement of the sale whether public or private must occur once a week for three consecutive weeks in a county newspaper of general circulation and the advertisement "shall state the terms of the sale and the manner thereof," and if a private sale, shall state "the terms thereof and the compensation to be received therefor, and [give] opportunity for objections thereto." Then follow paragraphs 10 and 11, as follows:

"10. All objections made to such sale *must be submitted in writing* to the director of central services *within the time limited in the advertisement,* and *forwarded with his recommendations to the county executive for a decision* as to whether or not the sale shall be approved, notwithstanding such objection. (Emphasis supplied)

"11. The county executive may, in his discretion, hear publicly the interested parties' views and if the sale is vacated, the unsuccessful purchaser will be refunded any deposit he may have made on account of the purchase of said property. On the other hand, if the sale is approved by the county executive, either with or without such public hearing, the director of central services shall refer the matter back to the chief of the bureau of land acquisition for the preparation of the necessary deed for conveying title to the purchaser and for settlement with the purchaser. Before such deed is delivered to the purchaser, it must be approved by the county solicitor as to form and legal sufficiency, and executed and acknowledged by the county executive or the county administrative officer."

It is clear to us that the advertisement fully complied with the provisions of the Executive Order and indicated

that the described fee simple property "has been declared as no longer needed for public use." An adequate description of the property proposed to be sold to the Letkes was given. The time limit for filing written objections expired on January 13, 1972.

It is uncontradicted that no written objections were filed within the time limit as is required by the Executive Order. This was confirmed by the County in the letter of January 14, 1972; and the Letkes were advised that upon receipt of their check for the $135.00 consideration, "we will have the Deed recorded and forward same to you when it is returned from recordation." The Letkes duly forwarded their check for $135.00 to the County on January 18, 1972. In sum, the procedure set forth in the Executive Order was exactly complied with and the objections were nugatory as having been filed well after the January 13th deadline. There was full compliance with the Executive Order.

## (2)

The contract between the County and the Letkes for the sale of the land—consisting of the advertisement setting forth the terms of the sale, the letter of January 14, 1972, and the sending of the $135.00 check by the Letkes —clearly stated that it had been determined that the land was "no longer needed for public use." This was a binding term of the contract and one required by the Executive Order. After the contract was complete, the County could not successfully escape from the contract by a subsequent purported determination that it was needed for public use. The County's only remedy then was by way of eminent domain and not by attempted repudiation of the contract.

The County, for the first time on appeal, attempted to raise the questions in regard to possible indefiniteness of the terms of the contract and that Mr. Redmond did not have authority to bind the County to the contract. These points not having been raised or decided below will not be considered by us on appeal. Maryland Rule 885. If

we had decided them, we would not have found these contentions to be meritorious.

*Decree of June 29, 1972, affirmed, the appellant to pay the costs.*